■ EUGENE MARGERUM et al., Respondents, v CITY OF BUFFALO et al., Appellants. [880 NYS2d 820]—

Appeal from an order of the Supreme Court, Erie County (John A. Michalek, J.), entered September 10, 2007. The order, inter alia, granted the cross motion of plaintiffs for partial summary judgment on liability.

It is hereby ordered that the order so appealed from is unanimously modified on the law by denying the cross motion and as modified the order is affirmed without costs.

Memorandum: Plaintiffs, 13 firefighters employed by defendant City of Buffalo Department of Fire (Fire Department), commenced this action alleging that defendants discriminated against them by allowing promotional eligibility lists created pursuant to the Civil Service Law to expire solely on the ground that plaintiffs, who were next in line for promotion, were Caucasian. Plaintiffs asserted causes of action based on the Human Rights Law (Executive Law art 15), the New York Constitution and the Civil Service Law. Before answering the complaint, defendants moved to dismiss it or, alternatively, to stay the action, and plaintiffs cross-moved for partial summary judgment on liability. We agree with defendants that Supreme Court erred in granting plaintiffs' cross motion but further conclude that the court properly denied defendants' motion. We therefore modify the order accordingly.

This action is one of a number of actions concerning the promotion of firefighters in the Fire Department, and it is helpful to review those prior actions in order to place this action in context. In 1980 the United States Court of Appeals for the Second Circuit determined, inter alia, that the defendant City of Buffalo (City) and the defendant Fire Department had discriminated against African-Americans, Hispanics and women (*United States v City of Buffalo*, 633 F2d 643 [1980], *modfg* 457 F Supp 612 [1978]). The "Final Decree and Order" dated November 23, 1979 that was issued by the District Court in that action prohibited the City and the Fire Department from engaging in any act or practice with respect to, inter alia, hiring or promotion "which has the purpose or effect of discriminating against any employee or future employee . . . because of such individual's race" (*United States v City of Buffalo*, 721 F Supp 463, 464 n 1 [1989], *affd* 993 F2d 1533 [1993]).

Following civil service examinations in 1998 and 2002, eligibility lists for various supervisory positions within the Fire Department were created. Based on the statistical disparities placing minorities at a disadvantage, Men of Color Helping All Society, Inc. (MOCHA), an organization of African-American firefighters employed by the Fire Department, commenced two actions in federal court alleging that the respective civil service examinations for the position of lieutenant were discriminatory with respect to African-Americans. "MOCHA I" challenged the 1998 examination, and "MOCHA II" challenged the 2002 examination.

In 2005 defendant Leonard Matarese, Commissioner of Human Resources for the City, allowed the eligibility lists for all supervisory positions within the Fire Department generated from the 2002 examinations to expire without granting a third one-year extension. Because all of the lists were generated from examinations developed at the same time and in the same manner as the examination for the position of lieutenant, Matarese believed that all of the lists were suspect. Plaintiffs are those nonminority candidates who were "next in line" for promotion on the expired lists, some of whom had been recommended for promotion before the lists were allowed to expire. In 2006 the Buffalo Professional Firefighters Association, Inc., Local 282, IAFF, AFL-CIO (Union) and all of the plaintiffs in this action, with the exception of Peter Kertzie, commenced two CPLR article 78 proceedings. In those proceedings, which were consolidated for appeal, the petitioners contended that the determination to allow the lists to expire was arbitrary and capricious and made in bad faith (*Matter of Hynes v City of Buffalo*, 52 AD3d 1216 [2008]). The petitioners further contended that the respondents should be compelled to make permanent various promotions that had been recommended before the lists were allowed to expire. Also in 2006, the Union filed grievances against the City, contending that the City violated the collective bargaining agreement when it failed to make a particular provisional appointment and other recommended promotions permanent.

Supreme Court, in December 2006, denied those parts of the petitions that challenged the determination to allow the lists to expire and the failure to make certain proposed appointments permanent. In January 2007, the arbitrator denied the Union's grievances, finding that the City did not violate the collective bargaining agreement in failing to make provisional appointments permanent or in failing to fill vacancies before the expiration of promotional "eligible lists."

In February 2007, while the appeals from the judgments in the consolidated CPLR article 78 proceedings were pending, plaintiffs commenced this action, contending that the determination to allow the eligibility lists to expire amounted to racial discrimination against plaintiffs. In July 2008, this Court affirmed in part the CPLR article 78 judgments on the ground that the determination "to permit the eligibility lists at issue to expire was not arbitrary, nor was it made in bad faith" (*Hynes*, 52 AD3d at 1217). On March 9, 2009, the District Court for the Western District of New York (John T. Curtin, J.) issued an order in MOCHA I concluding after a trial that, despite the dispar-

ate impact of the 1998 lieutenant examination, that examination "was developed . . . in a manner that is significantly correlated with important elements of work behavior which are relevant to the position . . . [and thus that] the City ha[d] met its burden of demonstrating that the Exam [was] job-related for the position and consistent with business necessity" (*M.O.C.H.A. Socy., Inc. v City of Buffalo*, 2009 WL 604898, *18, 2009 US Dist LEXIS 20070, *55-56 [2009]). Because the MOCHA I plaintiffs failed to establish "that other tests or devices were available for selection," the District Court dismissed the second amended complaint "to the extent it seeks relief under Title VII [of the Civil Rights Act of 1964] based on the City of Buffalo's use of the results of the 1998 Lieutenant's Exam to promote Buffalo firefighters to the rank of lieutenant" (2009 WL 604898, *18, 2009 US Dist LEXIS 20070, *56).

On this appeal from the order that, inter alia, granted plaintiffs' cross motion for partial summary judgment on liability on the complaint, defendants contend that plaintiffs' reverse discrimination allegations do not state a cause of action and that, even assuming, arguendo, that a strict scrutiny standard applies, we should conclude that defendants' conduct meets that standard and dismiss the complaint.

We agree with plaintiffs that the proper standard by which to measure defendants' conduct is that of strict scrutiny. The United States Supreme Court has repeatedly written that "all 'governmental action based on race—a *group* classification long recognized as in most circumstances irrelevant and therefore prohibited—should be subjected to detailed judicial inquiry to ensure that the *personal* right to equal protection of the laws has not been infringed' " (*Grutter v Bollinger*, 539 US 306, 326 [2003], *reh denied* 539 US 982 [2003], quoting *Adarand Constructors, Inc. v Pena*, 515 US 200, 227 [1995]). The Supreme Court has also held that " '[r]acial and ethnic distinctions of any sort are inherently suspect and thus call for the most exacting judicial examination' " (*Adarand Constructors, Inc.*, 515 US at 218, quoting *Regents of Univ. of Cal. v Bakke*, 438 US 265, 291 [1978]). In short, "[a]lthough all governmental uses of race are subject to strict scrutiny, not all are invalidated by it" (*Grutter*, 539 US at 326-327). Under the strict scrutiny standard, governmental actions based on race are constitutional "only if they are narrowly tailored to further compelling governmental interests" (*id.* at 326). "When race-based action is necessary to further a compelling governmental interest, such action does not violate the constitutional guarantee of equal protection so long as the narrow-tailoring requirement is also satisfied" (*id.* at 327).

On this record there can be no dispute that the determination to allow the eligibility lists to expire was made because those next in line for promotion were Caucasian and, in view of the ongoing discrimination actions in federal court, defendants wanted to avoid the further appointment of Caucasians. Thus, the governmental action being challenged was based on racial distinctions and should be subjected to the " 'most exacting judicial examination' " (*Adarand Constructors, Inc.*, 515 US at 218).

In contending that the strict scrutiny standard does not apply, defendants rely on *Hayden v County of Nassau* (180 F3d 42 [1999]). We conclude that their reliance on *Hayden* is misplaced. In that case, the plaintiffs were challenging the police department's act in designing race-neutral entrance examinations, and the Second Circuit concluded that "race-neutral efforts to address and rectify the racially disproportionate effects of an entrance examination do not discriminate against non-minorities" (*id.* at 54). In this case, defendants' actions were not race-neutral. Rather, defendants' determination to allow the lists to expire was made " 'because of' " the race of those individuals who were next in line for promotion (*id.* at 51).

Defendants also rely on a second decision of the Second Circuit, that of *Ricci v DeStefano* (554 F Supp 2d 142 [2006], *affd for reasons stated* 530 F3d 87 [2008], *reh en banc denied* 530 F3d 88 [2008], *cert granted* 555 US —, 129 S Ct 894 [2009]), to support their contention that the strict scrutiny standard does not apply. In our view, the implications of *Ricci* are not clear. In that case, the New Haven Civil Service Board refused to certify the results of two promotional examinations upon learning of the disparate impact that those examinations had on minorities (*Ricci*, 554 F Supp 2d at 145-146). Although the District Court recognized that the refusal to certify the results of the examinations was a race-conscious decision, the court concluded that the remedy was race-neutral (*id.* at 158). The court determined that there was no "facial classification based on race" (*id.* at 161), and it dismissed the complaint. Although the Second Circuit affirmed for the reasons stated, it then denied a rehearing en banc by only a majority of seven to six (530 F3d 88 [2008]). The six dissenting judges voted to grant a rehearing to address, inter alia, an "important question[ ] of first impression in [the Second] Circuit [:] . . . May a municipal employer disregard the results of a qualifying examination, which was carefully constructed to ensure race-neutrality, on the ground that the results of that examination yielded too many qualified applicants of one race and not enough of anoth-

er?" (*Ricci*, 530 F3d 88, 93-94 [2008, Cabranes, J., dissenting]). In distinguishing *Hayden*, Judge Cabranes in his dissent noted that "[n]eutral administration and scoring—even against the backdrop of race conscious *design* of an employment examination . . . is one thing. But neutral administration and scoring that is followed by race-based treatment of examination results is surely something else entirely" (*id.* at 98).

Although the underlying facts of *Ricci* are similar to the facts of this case, we ultimately conclude that *Ricci* is distinguishable from this case and thus that defendants mistakenly rely upon it. In *Ricci* the examination results were discarded before any appointments were made and without any consideration of those who would have been next in line for promotion. In this case, however, the examination results were certified, eligibility lists were created and promotions were made for three years before the determination was made to allow the promotional eligibility lists to expire. In other words, the determination in this case was in fact made based on the race of those next in line for promotion.

We conclude, however, that plaintiffs were not entitled to partial summary judgment on liability. First, plaintiffs failed to establish the absence of a compelling interest. Indeed, "a sufficiently serious claim of discrimination" may constitute a compelling interest to engage in race-conscious remedial action (*Bushey v New York State Civ. Serv. Commn.*, 733 F2d 220, 228 [1984], *cert denied* 469 US 1117 [1985], *reh denied* 470 US 1024 [1985]). Second, plaintiffs submitted no evidence to establish that defendants' actions were not narrowly tailored to meet the allegedly compelling interest. Thus "the record is insufficient to determine whether [defendants'] plan trammeled the interests of the nonminority [plaintiffs] . . . [and] a full exploration of this disputed issue" is warranted (*Bushey*, 733 F2d at 229). For that same reason, the court properly denied defendants' motion to dismiss the complaint. We reject defendants' contention that plaintiffs failed to state a cause of action, thus warranting dismissal of the complaint. "[I]n determining whether to dismiss a complaint for failure to state a cause of action, the court must accept all of the allegations in the complaint as true . . . The 'sole criterion is whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law a motion for dismissal will fail' " (*Meyer v Stout*, 45 AD3d 1445, 1446 [2007], quoting *Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]). The facts alleged in the complaint, when accepted as true, state a viable cause of action.

We also reject the contention of defendants that plaintiffs were required to file a notice of claim before commencing this action and thus that the complaint should be dismissed based on plaintiffs' failure to do so (*see Picciano v Nassau County Civ. Serv. Commn.*, 290 AD2d 164, 170 [2001]; *Sebastian v New York City Health & Hosps. Corp.*, 221 AD2d 294 [1995]; *cf. Grasso v Schenectady County Pub. Lib.*, 30 AD3d 814, 816-817 [2006]; *Mendell v Salamanca Hous. Auth.*, 12 AD3d 1023 [2004]). Contrary to defendants' further contention, plaintiffs' action is not barred by the doctrines of res judicata or collateral estoppel. In the prior CPLR article 78 proceedings plaintiffs could not have sought the relief they seek in this action (*see generally Parker v Blauvelt Volunteer Fire Co.*, 93 NY2d 343, 348-349 [1999]), nor were the issues raised in this action either raised or necessarily decided in the prior proceedings (*see generally Buechel v Bain*, 97 NY2d 295, 303-304 [2001], *cert denied* 535 US 1096 [2002]).

Based on our determination with respect to plaintiffs' cross motion, we see no need to address defendants' remaining contention concerning the relief being sought by plaintiffs. Present—Hurlbutt, J.P., Martoche, Centra, Pine and Gorski, JJ.