OPINION OF THE COURT
Chief Judge Lippman.
We hold that a notice of claim need not be filed for a Human Rights Law claim against a municipality and that plaintiffs should not have been granted summary judgment on the issue of liability involving discrimination as to civil service lists for Buffalo firefighters. We therefore remit for further proceedings.
In 1974, the United States sued the City of Buffalo in the Western District of New York. Among other things, the suit alleged that the written civil service examination developed by the New York State Department of Civil Service and used by the City to select entry-level firefighters and police officers had a discriminatory adverse impact against minorities. The District Court found that the City’s continued use of the State’s examination was part of a pattern or practice of discrimination against African-Americans, Hispanics and women in the fire and police departments (see United States v City of Buffalo, 457 F Supp 612 [WD NY 1978]). The District Court issued a “Remedial Decree” designed to remedy the effects of past discrimination, which imposed interim hiring ratios and affirmative recruitment efforts to increase the percentages of underrepresented classes. The decree was, for the most part, affirmed by the Second Circuit (633 F2d 643 [2d Cir 1980]).
In 1998, Members of Color Helping All (MOCHA), a not-for-profit organization of African-American firefighters, brought a putative class action against the City of Buffalo in the Western District of New York, alleging racially discriminatory practices *728 by the Buffalo Fire Department in violation of title VII of the Civil Rights Act of 1964 (42 USC § 2000e et seq.) and the New York Human Rights Law (MOCHA I). Among other things, the plaintiffs claimed that the 1998 examination used to select firefighters for promotion had an illegal disparate impact against African-American firefighters. MOCHA filed a second putative class action in 2003. This second suit alleged that the 2002 administration of the exam had the same discriminatory disparate impact as the 1998 exam {MOCHA II). About two years after the MOCHA II commencement, the City’s then Human Resources Commissioner, Leonard Matarese, decided to allow the promotion eligibility lists to expire between September 2005 and February 2006, before the four-year maximum duration had elapsed.
Thereafter, while MOCHA I and MOCHA II were still pending, this action was commenced. The 12 white firefighter plaintiffs on this appeal alleged that the City engaged in reverse, disparate treatment racial discrimination by permitting the promotion eligibility lists to expire before their maximum legal duration, thereby violating the Human Rights Law, the Civil Service Law, and the New York State Constitution.* Plaintiffs allege that had the lists been extended to their maximum duration of four years, in accordance with historical practice, they would have received promotions.
Prior to answering, the City moved to dismiss the complaint pursuant to CPLR 3211, raising, among other grounds, plaintiffs’ undisputed failure to file a General Municipal Law § 50-i notice of claim. The City argued that the statutory provision required the plaintiffs, as a precondition to commencing suit, to provide prior notice of their claims in order to permit timely investigation and opportunity for early resolution. Plaintiffs cross-moved for partial summary judgment on liability. Supreme Court denied the City’s motion to dismiss and granted plaintiffs’ motion for summary judgment on liability. The litigation was then stayed pending resolution of the MOCHA I litigation.
The federal District Court then issued an order dismissing the title VII claims to the extent the MOCHA plaintiffs sought relief based on the City’s 1998 administration of the exam (M.O.C.H.A. Socy., Inc. v City of Buffalo, 2009 WL 604898, 2009 *729 US Dist LEXIS 20070 [WD NY Mar. 9, 2009, No. 98-CV-99C]). A year later, the District Court dismissed the MOCHA II litigation as well, finding that the MOCHA plaintiffs were collaterally estopped from challenging the 2002 administration of the exam because there was a “substantial identity of the dispositive issues and proof regarding the validity of the Lieutenant’s Exams litigated in M.O.C.HA. I and M.O.C.H.A. II” (M.O.C.H.A. Socy., Inc. v City of Buffalo, 2010 WL 1930654, *4, 2010 US Dist LEXIS 46628, *11 [WD NY May 12, 2010, No. 03-CV-580-JTC]).
In the present action, the Appellate Division, in June 2009, affirmed Supreme Court’s denial of the City’s motion to dismiss, holding that dismissal was not warranted based on plaintiffs’ failure to file a notice of claim under the General Municipal Law (63 AD3d 1574 [2009]). The Court further concluded that plaintiffs were not entitled to summary judgment because they had failed to establish as a matter of law that the City’s actions were not narrowly tailored to meet a compelling interest.
Three weeks later, the United States Supreme Court issued its decision in Ricci v DeStefano (557 US 557 [2009]). In ruling for the petitioners, the Court concluded that an employer could not act based on mere statistical disparity alone — “[w]ithout some other justification, . . . race-based decisionmaking violates Title VII’s command that employers cannot take adverse employment actions because of an individual’s race” (id. at 579). The Court held that “before an employer can engage in intentional discrimination for the asserted purpose of avoiding or remedying an unintentional disparate impact, the employer must have a strong basis in evidence to believe it will be subject to disparate-impact liability if it fails to take the race-conscious, discriminatory action” (id. at 585).
At the direction of the Appellate Division, both sides renewed their arguments at the Supreme Court and cross-moved for summary judgment. Supreme Court granted plaintiffs’ motion for summary judgment on the issue of liability. The court concluded that the City had failed to meet the strong basis in evidence standard set forth in Ricci.
The Appellate Division affirmed stating:
“We agree with the court that the City defendants did not have a strong basis in evidence to believe that they would be subject to disparate-impact liability if they failed to take the race-conscious action, i.e., allowing the eligibility lists to expire, *730 inasmuch as the examinations in question were job-related and consistent with business necessity” (Margerum v City of Buffalo, 83 AD3d 1575, 1576 [4th Dept 2011]).
With liability established, the trial court proceeded with a bench trial on damages culminating in a judgment awarding plaintiffs $2,510,170 in economic damages and $255,000 in emotional distress damages. The Appellate Division reduced the economic damages, yielding a final judgment of $1,621,607 (108 AD3d 1021 [2013]). This Court granted leave to appeal to both plaintiffs and the City.
Preliminarily, we reject the City’s argument for dismissal on the basis of plaintiffs’ failure to file a notice of claim prior to commencement of this action. General Municipal Law § 50-e (1) (a) requires service of a notice of claim within 90 days after the claim arises “[i]n any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation.” General Municipal Law § 50-i (1) precludes commencement of an action against a city “for personal injury, wrongful death or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of such city,” unless a notice of claim has been served in compliance with section 50-e. The Appellate Division departments addressing the issue have determined that the General Municipal Law does not encompass a cause of action based on the Human Rights Law and “[s]ervice of a notice of claim is therefore not a condition precedent to commencement of an action based on the Human Rights Law in a jurisdiction where General Municipal Law §§ 50-e and 50-i provide the only notice of claim criteria” (Picciano v Nassau County Civ. Serv. Commn., 290 AD2d 164, 170 [2d Dept 2001]; see Sebastian v New York City Health & Hosps. Corp., 221 AD2d 294, 294 [1st Dept 1995]; Palmer v City of New York, 215 AD2d 336, 336 [1st Dept 1995]). Human rights claims are not tort actions under section 50-e and are not personal injury, wrongful death, or damage to personal property claims under section 50-i. Nor do we perceive any reason to encumber the filing of discrimination claims. Accordingly, we conclude that there is no notice of claim requirement here.
As to liability, we do not believe that this is an issue that should have been decided at the summary judgment stage. In Ricci v DeStefano, the United States Supreme Court held that *731 before taking race-based action, “the employer must have a strong basis in evidence to believe it will be subject to disparate-impact liability if it fails to take the race-conscious, discriminatory action” (557 US at 585 [emphasis added]). As both parties agree, the Ricci standard governs. We have consistently held that the standards for recovery under the New York Human Rights Law are in nearly all instances identical to title VII and other federal law (see e.g. Forrest v Jewish Guild for the Blind, 3 NY3d 295, 305 n 3 [2004]; Rainer N. Mittl, Ophthalmologist, P.C. v New York State Div. of Human Rights, 100 NY2d 326, 330 [2003]).
In United States v Brennan (650 F3d 65 [2d Cir 2011]), the Second Circuit cautioned against allowing a defendant to rely on after-acquired evidence to buttress a race-based decision, noting that the Ricci Court “considered only what the city knew at the time it made its decision,” and explaining:
“The rationale underlying Ricci, moreover, confirms that the evidence is to be gauged at the time of the race- or sex-conscious employer action. The strong-basis-in-evidence standard is intended to ‘ strike [ ] a . . . balance’ between the Title VII provisions concerning disparate treatment and disparate impact, so that employers make the right decisions in the first place” {id. at 111).
In this case, the issue of liability turns on the factual circumstances behind the City’s actions, the strength of its justifications and its motivations. It is undisputed that the plaintiffs here made out a prima facie case of discrimination, as the City chose not to promote white candidates from the eligibility list. The burden then shifted to the City to prove that it had “a strong basis in evidence” to justify its race conscious action (see Christopher v Adam’s Mark Hotels, 137 F3d 1069, 1071 [8th Cir 1998] [“We proceed with caution when deciding whether summary judgment is appropriate in employment discrimination cases because intent is usually a central issue”]; and see St. Mary’s Honor Center v Hicks, 509 US 502, 507-508 [1993]; McDonnell Douglas Corp. v Green, 411 US 792, 802 [1973]; Forrest, 3 NY3d at 328 [“Whether or not these changes occurred as a result of the grievances filed by appellant would arguably be a question of fact for the jury. Further, whether or not appellant was terminated as a result of her grievances and for filing a complaint in September 1994 with the EEOC and New York City Human Rights Commission would also arguably be questions for the jury”]).
*732 Given the nature of the matter, the City’s litigation posture in the MOCHA court cannot be taken at face value. There must be a credibility assessment of the City’s position as to the validity of the examinations, the prospects in the federal litigation, and the reasons for its decision to expire the promotion eligibility lists. We know that Matar ese decided to let the promotion eligibility lists expire in 2005 and 2006. What we do not know is why. There are differences between Matarese’s testimony from 2006 and his testimony from 2010. The October 25, 2006 testimony, given while the MOCHA litigation was pending, is vague, and mostly focuses on his desire to undo the racial imbalance in the fire department. Matarese’s affidavit, dated January 20, 2010, explicitly cites the advice of the City’s expert, Dr. Nancy Abrams — that there was a substantial risk that the MOCHA plaintiffs would prevail in federal court — as the City’s reason for allowing the lists to expire. In light of Brennan (650 F3d at 111), the facts thus far ascertained are insufficient to determine what the City’s intentions were at the time that the lists were expired.
Based on the record before us, we conclude that whether the City had “a strong basis in evidence to believe it [would] be subject to disparate-impact liability” at the time that it terminated the promotion eligibility lists while the MOCHA litigation was still pending raises issues of fact that cannot be determined on motions for summary judgment.
Accordingly, the order of the Appellate Division should be modified, without costs, by remitting to Supreme Court for further proceedings in accordance with this opinion, and, as so modified, affirmed.

 There were originally 13 plaintiffs in this case; the trial court dismissed the claims of one plaintiff, Anthony Hynes, on February 8, 2012, finding that the City’s actions had not harmed him. He did not appeal; thus, this appeal involves 12 plaintiffs.