15-2395
*Carter v. Syracuse City School District*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of July, two thousand sixteen.

PRESENT: CHESTER J. STRAUB,
RICHARD C. WESLEY,
DEBRA ANN LIVINGSTON,
        *Circuit Judges.*

_____

CORENE D. CARTER, AKA CORENE BROWN,

                *Plaintiff-Appellant,*


        -v.-                                15-2395


SYRACUSE CITY SCHOOL DISTRICT, DANIEL LOWENGARD, JOHN DITTMAN, JILL STEWART, JOHN DOE(S), JANE DOE(S),

                *Defendants-Appellees.*

_____

FOR APPELLANT: A.J. BOSMAN, Bosman Law Firm, L.L.C., Canastota, NY.

FOR APPELLEE: MILES G. LAWLOR, Ferrara Fiorenza PC, East Syracuse, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Scullin, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **VACATED** and the case is **REMANDED**.

Plaintiff-Appellant Corene D. Carter, a former English teacher at the Institute of Technology of Defendant-Appellee Syracuse City School District (the "School District"), appeals from the judgment dated June 25, 2015 of the District Court granting summary judgment on Carter's remaining claims in favor of Defendants-Appellees (1) the School District, (2) Daniel Lowengard, the School District's former Superintendent, (3) John Dittman, former Principal of the Institute of Technology, and (4) Jill Stewart, former Vice Principal of the Institute of Technology (collectively, "Defendants"). Carter appeals from (1) the District Court's denial of her motion for leave to amend her complaint to include a claim for disability discrimination under the Rehabilitation Act, 29 U.S.C. § 794, against

2

the School District. Carter also (2) appeals from the dismissal, on the pleadings, of her (i) state law claims of discrimination under the New York State Human Rights Law, N.Y. Exec. Law §§ 296 *et seq.* ("NYSHRL"), against the School District and Superintendent Lowengard, (ii) discrimination claim under Title VII against the School District, (iii) retaliation claim under Title VII against the School District, and (iv) First Amendment retaliation claim under 42 U.S.C. § 1983 against the School District. In addition, Carter (3) appeals from the denial of her motion for leave to reopen discovery and depose Benjamin Frazier, the former Vice Principal of the Institute of Technology, and defer consideration of Defendants' summary judgment motion. Last, Carter (4) appeals from the District Court's grant of summary judgment in favor of Defendants on her remaining claims of (i) discrimination under the NYSHRL against Principal Dittman and Vice Principal Stewart, (ii) discrimination and hostile work environment under 42 U.S.C. § 1983 against Superintendent Lowengard, Principal Dittman, and Vice Principal Stewart, and (iii) § 1983 municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), against the School District. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I. DISTRICT COURT'S DISMISSAL OF CARTER'S CLAIMS ON THE PLEADINGS

"We review *de novo* a district court's dismissal of a suit pursuant to a motion for judgment on the pleadings." *Mantena v. Johnson*, 809 F.3d 721, 727 (2d Cir. 2015). In deciding a Rule 12(c) motion for judgment on the pleadings, "we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Id.* at 727–28 (quoting *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999)).

### A. NYSHRL Claims Against the School District and Superintendent Lowengard

Before the District Court, Carter sought, among other things, to amend her complaint to assert New York state law claims of retaliation and racial and gender discrimination against the School District and Superintendent Lowengard pursuant to the NYSHRL. The District Court dismissed these claims on the basis that Carter had failed to comply with the notice-of-claim requirements, which the District Court held were conditions precedent to bringing any claim under the NYSHRL against a school district or its officers. This was error. The New York State Court of Appeals recently clarified "that a notice of claim need not be filed for a Human Rights Law claim against a municipality." *Margerum v. City of*

4

*Buffalo*, 24 N.Y.3d 721, 727 (2015). The *Margerum* Court reasoned that "[h]uman rights claims are not tort actions under section 50-e and are not personal injury, wrongful death, or damage to personal property claims under section 50-i." *Id.* at 730. Accordingly, it concluded that a notice of claim was not a condition precedent to a plaintiff's lawsuit alleging NYSHRL violations against a governmental entity.

In light of this holding, we hold that the District Court erred in dismissing Carter's NYSHRL claims against the School District and Superintendent Lowengard on the basis that Carter failed to comply with the notice-of-claim provisions. Because these requirements do not apply to a plaintiff's lawsuit alleging claims under the NYSHRL, we vacate the District Court's dismissal of Carter's NYSHRL claims asserted in Count 5 of the proposed amended complaint, and remand with directions to reconsider whether these claims survive Defendants' motion for judgment on the pleadings.

## B. Title VII Discrimination Claim Against the School District

Below, the District Court analyzed Carter's Title VII discrimination claim under the three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), concluded that Carter had failed to

5

establish a *prima facie* case of employment discrimination, and dismissed her claim because she had failed to allege any set of facts that plausibly established that she had suffered an adverse employment action that gave rise to an inference of discrimination.

We recently clarified that a Title VII plaintiff need not establish a *prima facie* case at the pleadings stage. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85–86 (2d Cir. 2015). Rather, the proper standard under which to assess a Title VII plaintiff's complaint is *Iqbal* and *Twombly*. "Under *Iqbal* and *Twombly*, then, in an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Id.* at 86. In other words, at the pleadings stage, "a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87.

As an initial matter, the District Court applied the incorrect legal standard in evaluating Carter's discrimination claim, as Carter was not required at the

pleadings stage to establish a *prima facie* case of discrimination. Further, we conclude that Carter's proposed amended complaint, when drawing all reasonable inferences in her favor, as we must, pled sufficient facts that plausibly established that she suffered an adverse employment action based at least in part on a discriminatory reason. Carter's proposed amended complaint pled, for instance, that "a sham evaluation of [her] performance" was conducted by Vice Principal Stewart, which resulted in Carter being "placed on an 'assistance plan'" and rendered her "ineligible to participate in such programs as 'Master Teacher[,]' causing her a loss of income." App. 346. Carter alleged further that she complained about the negative evaluation she received to Vice Principal Benjamin Frazier, who "told her that the adverse treatment was due to her race and gender." App. 346. It is beyond cavil that a "loss of income" qualifies as an adverse employment action, as does an employer's failure to promote. *See Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999) ("Adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand."), *abrogated on other grounds by Lore v. City of Syracuse*, 670 F.3d 127 (2d Cir. 2012). Assuming Carter's factual allegations as true, and when drawing all reasonable inferences in her favor, we conclude that she has plausibly alleged

7

facts sufficient to state a claim for discrimination under Title VII.  Accordingly,

we vacate so much of the District Court's judgment as dismisses Carter's Title

VII discrimination claim against the School District asserted in Count 1 of

Carter's proposed amended complaint.

**C. Title VII Retaliation Claim Against the School District**

Similar to its assessment of Carter's Title VII discrimination claim, the

District Court concluded that Carter failed to establish a *prima facie* cause of

action of retaliation under Title VII because she failed to sufficiently allege that

she suffered an adverse employment action.

> Title VII provides that "[i]t shall be an unlawful employment
> practice for an employer to discriminate against any of his
> employees . . . because he has opposed any practice made an
> unlawful employment practice by this subchapter, or because he has
> made a charge, testified, assisted, or participated in any manner in
> an investigation, proceeding, or hearing under this subchapter."

*Vega*, 801 F.3d at 89–90 (alterations in original) (quoting 42 U.S.C. § 2000e-3(a)).

As with discrimination claims brought under Title VII, we recently clarified that,

"for a retaliation claim to survive a motion for judgment on the pleadings or a

motion to dismiss, the plaintiff must plausibly allege that: (1) defendants

discriminated—or took an adverse employment action—against him, (2)

'because' he has opposed any unlawful employment practice."  *Id.* at 90.  Further,

8

"[u]nlike Title VII discrimination claims, however, for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Id.* That is, "a plaintiff must plausibly plead a connection between the act and his engagement in protected activity." *Id.* Moreover, the definition for an adverse employment action in the context of a Title VII retaliation claim casts a much wider net than that for a substantive claim under Title VII. "[I]n the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). Thus, "the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington*, 548 U.S. at 64. The proper assessment is to determine, from "the perspective of a reasonable person in the plaintiff's position," whether the alleged retaliatory acts "are likely to dissuade employees from complaining or assisting in complaints about discrimination." *Id.* at 69–70.

As with its dismissal of Carter's Title VII discrimination claim, the District Court erred in requiring that Carter establish a *prima facie* case of Title VII

9

retaliation at the pleadings stage. We further conclude that the facts in the proposed amended complaint are sufficient to plausibly allege a claim of retaliation under Title VII. Carter alleged that, "on or about April 27, 2009, [she] filed a complaint of discrimination with the [NYSDHR]," A347, which is a protected activity. *See Matima v. Celli*, 228 F.3d 68, 80 (2d Cir. 2000) ("Matima also filed a formal complaint of discrimination (which unquestionably constitutes protected activity)."). Carter further alleged that, following the filing of her complaint of discrimination with the NYSDHR, she made a request to the School District, through her treating physician, that she be "relocate[d] . . . to another school," which she insisted could have been done "without difficulty and *would have* [*been*] *done . . . had* [*Carter*] *not complained of discrimination*," because "a faculty member's request for a transfer [was] typically honored." App. 347 (emphasis added). The adverse-employment-action inquiry for a retaliation claim has a much lower bar than for a Title VII claim of discrimination. We cannot say at the pleadings stage, as a matter of law, that, from the perspective of a reasonable person in Carter's position, she would not have been dissuaded from filing her discrimination complaint with the NYSDHR if she knew that as a result thereof she would be denied a request for transfer to a different school, away from those

10

co-workers she claims caused her work-related stress condition and required her to take leave and seek medical treatment. We therefore vacate the District Court's judgment to the extent it dismisses Carter's Title VII claim of retaliation against the School District asserted in Count 4 of the proposed amended complaint.

## II. CARTER'S REQUEST FOR ADDITIONAL DISCOVERY

"[W]e review the denial of leave for discovery under Fed. R. Civ. P. 56[(d)] for abuse of discretion." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003) (discussing prior version of the rule under Fed. R. Civ. P. 56(f)).

> Rule 56 provides that if a party opposing a summary judgment motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may, *inter alia*, deny the summary judgment motion or order a continuance to allow the opposing party to obtain affidavits, take depositions, or conduct other discovery that is material to its opposition to the motion.

*In re Dana Corp.*, 574 F.3d 129, 148 (2d Cir. 2009). "This Circuit has established a four-part test for the sufficiency of an affidavit submitted pursuant to Rule 56[(d)]." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994).

> [A] party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing (1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably

11

expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.

*Miller*, 321 F.3d at 303 (alterations in original) (quoting *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999)). A district court, however, "plainly has discretion to reject a request for discovery if the evidence sought would be cumulative or if the request is based only on 'speculation as to what potentially could be discovered,' and a bare assertion that the evidence supporting plaintiff's allegations is in the hands of the moving party is insufficient to justify the denial of summary judgment." *Dana Corp.*, 574 F.3d at 148–49 (quoting *Paddington*, 34 F.3d at 1138). Nonetheless, "a party against which summary judgment is sought must be afforded 'a reasonable opportunity to elicit information within the control of his adversaries.'" *Id.* at 149 (quoting *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980)).

In the present case, following the completion of discovery, Carter sought leave to depose Vice Principal Frazier and asked the District Court to defer consideration of Defendants' summary judgment motion pending completion of Vice Principal Frazier's deposition. According to the affidavits submitted in support of Carter's motion by her counsel, Vice Principal Frazier had originally

12

"expressed a complete willingness to support [Carter] and her case" just two days before Carter was required to submit her opposition to Defendants' summary judgment motion. *See* App. 1499. Thereafter, when counsel spoke to Vice Principal Frazier after preparing an affidavit for him to sign, however, he changed his position, refused "to sign any affidavit in support of [Carter]" out of "fear of being retaliated against by the Defendants," and refused further contact with Carter's counsel. App. 1499. The affidavits also note that, to counsel's "surprise[]," Vice Principal Frazier instead "submitted an affidavit on behalf of the Defendants . . . omitt[ing] all of the contextual information" and "misleading" the District Court. App. 1499, 1502. The District Court denied Carter's motion on the basis that she had "failed to demonstrate that she could not have deposed Mr. Frazier during the discovery period, and there [was] nothing in the record to indicate that she did not have ample time to do so." Special App. 56. Accordingly, the District Court also denied Carter's motion to the extent it sought to reserve decision on Defendants' summary judgment motion, and granted summary judgment in favor of Defendants on Carter's remaining claims. We conclude that the District Court abused its discretion in

13

denying Carter's motion and granting summary judgment in the face of Carter's request for discovery.

Although the District Court concluded that the affidavits did not contain any explanation that justified Carter's failure to depose Vice Principal Frazier during discovery, this finding is untenable in light of the detailed allegations contained in the affidavits. The affidavits establish that Carter did not depose Vice Principal Frazier at an earlier date during the discovery period because, up until the submission of Defendants' reply brief, Carter was under the impression that Vice Principal Frazier was going to serve as a witness in support of *her* case, not Defendants', and therefore she previously had no reason to depose her own witness. It therefore follows that she was not afforded a reasonable opportunity to obtain information within the control of Defendants. *See Dana Corp.*, 574 F.3d at 149. Moreover, the sworn affidavits also identify the potentially discoverable evidence that would raise a genuine issue of material fact as to Carter's claims, thereby satisfying the requirements warranting additional limited discovery.

Therefore, we vacate the District Court's judgment and remand this action to permit the District Court to reconsider the motion for summary judgment in

light of Vice Principal Frazier's deposition after it is properly submitted to the District Court.

Moreover, although we defer consideration of the District Court's summary judgment decision, we express some reservations with its grant of summary judgment to Defendants on Carter's remaining claims even without the benefit of Vice Principal Frazier's deposition testimony.

As to the District Court's holding that Carter's NYSHRL claim against Principal Dittman and Vice Principal Stewart fails because Carter did not put forth evidence of an adverse employment action or discriminatory motive, we note that Carter submitted evidence, in the form of her sworn affidavits, that she was placed on an "assistance plan" after receipt of a "sham" negative evaluation from Stewart, that she was told that an assistance plan is the first step in termination, that she became ineligible to participate in the "Master Teacher" program as a result of the assistance plan, and that she could have generated additional income had she not been on the assistance plan. App. 327–29 (internal quotation marks omitted). Contrary to the District Court's conclusion, we have held that negative evaluations *may* constitute adverse employment actions in certain circumstances. *See Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 756

15

(2d Cir. 2004). As to whether Carter has set forth sufficient evidence of discriminatory motive, we highlight that Carter affirms that Principal Dittman expressly told her that white teachers, including Principal Dittman himself, felt intimidated by her because of her status as a "tall Black, well-spoken, educated, professional woman," while Vice Principal Frazier stated to Carter that he was initially meant to perform her evaluation and that "they" were "doing this" to her because she is "a well[-]educated Black woman." App. 323–34, 328 (internal quotation marks omitted).

With respect to Carter's 42 U.S.C. § 1983 hostile work environment claim against Superintendent Lowengard, Principal Dittman, and Vice Principal Stewart, the District Court's somewhat cursory analysis of this claim does not appear to give consideration to the substantive, admissible evidence that Carter has put forth. The District Court's decision makes no mention, for instance, of Principal Dittman's and Vice Principal Stewart's statements to Carter that others were intimidated by her on account of her gender and race, which Carter set forth in her sworn affidavits. It also fails to mention three instances, recounted in Carter's affidavits, when teachers made purportedly racist remarks to Carter— once when a teacher stated, "[w]here I went to school in the Adirondacks there

16

were no Blacks," another time when a teacher began to tell Carter a racist joke and stopped only upon seeing that she disapproved, and a third time when a teacher made a comment to Carter about African American students fighting with one another because it was "cultural." App. 324, 326, 1298 (internal quotation marks omitted). Finally, the District Court fails to acknowledge Carter's affirmation that she complained about discriminatory treatment to the School District's Director of Personnel, Randy Williams, who responded that she should "dig [her] heels in." App. 327 (internal quotation marks omitted). That Defendants contest the accuracy of Carter's accounts is of no consequence on summary judgment. It is the court's prerogative on summary judgment—indeed, its only prerogative—to determine whether there is sufficient evidence from which a jury *could* find that a hostile work environment existed, not to weigh the evidence and make credibility determinations on its own.[1]

Finally, as to Carter's 42 U.S.C. § 1983 claim against the School District, Carter has stated in her sworn affidavits that she complained of discriminatory treatment to Principal Dittman and Director of Personnel Williams, and that

---

[1] Should the District Court find on reconsideration following Vice Principal Frazier's testimony that there is sufficient evidence of a hostile work environment, it will have to determine whether there is sufficient evidence that the individual defendants had "personal involvement in the claimed violation," such that they could be found individually liable. *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004).

17

neither took any action in response.  Carter also submitted affidavits from two former School District employees, Freddy Triana and Thomas Moore, who both recount instances of racial discrimination that they experienced while employed by the School District as well as the School District's lack of any response to their discrimination complaints.  The District Court incorrectly noted that Carter did not provide evidence from *any* other employees or former employees of the School District who claim that they were subject to racial discrimination.  It thus failed to consider whether the evidence provided by Moore and Triana's affidavits was sufficient to permit a jury to find that the actions of the School District (or lack thereof) rose to the level of "inaction in the face of known and pervasive harassment," such that they "reflect[] an unconstitutionally discriminatory custom or practice."  *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 63 (2d Cir. 2014).

To be clear, we do not hold at this stage that the District Court in fact erred in its summary judgment determinations, and we in no way opine as to whether summary judgment will prove appropriate as to some or all of the claims once Vice Principal Frazier has been deposed.  We defer consideration as to this issue, while urging the District Court fully to analyze the evidence that Carter has set

18

forth when reconsidering her claims in light of Vice Principal Frazier's deposition testimony.

## III.    CONCLUSION

We have considered Carter's remaining arguments, including her contentions that the District Court erred in (1) denying her motion for leave to amend her complaint to include a claim for disability discrimination under the Rehabilitation Act, 29 U.S.C. § 794, against the School District, and (2) dismissing, on the pleadings, her First Amendment retaliation claim under 42 U.S.C. § 1983 against the School District, and find them to be without merit.  Accordingly, we **VACATE** the District Court's dismissal of Carter's New York State Human Rights Law claims against the Syracuse City School District and Daniel Lowengard asserted in Count 5 of the proposed amended complaint; **VACATE** the District Court's dismissal of Carter's Title VII discrimination and retaliation claims against the Syracuse City School District asserted in Counts 1 and 4 in the proposed amended complaint; **VACATE** that part of the judgment denying leave

to reopen discovery, depose Vice Principal Frazier, and defer consideration of

Defendants' summary judgment motion; and **REMAND** the case for further

proceedings.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk