Matter of Cagino v New York State Div. of Human Rights (2023 NY Slip Op 03395)

Matter of Cagino v New York State Div. of Human Rights

2023 NY Slip Op 03395

Decided on June 22, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 22, 2023

535962
[*1]In the Matter of Paul F. Cagino, Appellant,
v
New York State Division of Human Rights, Respondent, and New York State Office of the Attorney General, Respondent.

Calendar Date:May 3, 2023

Before:Egan Jr., J.P., Clark, Pritzker and Ceresia, JJ.

Paul F. Cagino, Glenmont, appellant pro se.
Letitia James, Attorney General, Albany (Kevin C. Hu of counsel), for New York State Office of the Attorney General, respondent.

Ceresia, J.
Appeal from an order of the Supreme Court (Kimberly A. O'Connor, J.), entered August 12, 2022 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to Executive Law § 298, to review a determination of respondent State Division of Human Rights finding no probable cause to believe respondent Office of the Attorney General had engaged in an unlawful discriminatory practice relating to employment.
Petitioner is a former employee of respondent Office of the Attorney General (hereinafter OAG) who served for 14 years as the section head for the Tort Unit of the Albany Claims Bureau. After petitioner was denied promotions to the positions of bureau chief and deputy bureau chief, he commenced a lawsuit against two employees of OAG, alleging age and religious discrimination.[FN1] Petitioner's claims were ultimately dismissed and, upon the ensuing appeal, the dismissal was affirmed (see Cagino v Levine, 199 AD3d 1103 [3d Dept 2021]).
During the pendency of the lawsuit, petitioner submitted a Freedom of Information Law (see Public Officers Law art 6 [hereinafter FOIL]) request to OAG seeking records related to the use of identification cards by certain employees — two of whom were the named defendants — to gain access to State buildings. OAG's Records Access Officer denied the request, concluding that the records were exempt under Public Officers Law § 87 (2) (b) because disclosure would result in an unwarranted invasion of privacy. That determination was upheld on administrative appeal, with the appeals officer withholding the records under Public Officers Law § 87 (2) (b) and (f) on the additional ground that disclosure would potentially endanger the life or safety of the individuals to whom the records pertained.
Petitioner thereafter commenced a CPLR article 78 proceeding challenging the FOIL denial and seeking, among other things, to compel OAG to provide the requested records. OAG filed papers in opposition to the petition, defending the FOIL denial as justified to protect the life or safety of the individuals who were the subject of the documents, emphasizing that petitioner had made increasingly harassing statements toward OAG employees and had attempted to gain access to secure OAG workspaces after his retirement. Based upon the foregoing, OAG's opposition papers argued that disclosure of the records — which, in its view, served as a surveillance mechanism to monitor these individuals' movements — would be dangerous.
Taking issue with certain statements made in such opposition papers, which he claimed were defamatory against him, petitioner filed a complaint with the Equal Employment Opportunity Commission, which was transferred to respondent State Division of Human Rights (hereinafter SDHR). The complaint alleged, as relevant here, that the allegedly defamatory statements made in OAG's opposition papers were an adverse employment action made in retaliation for petitioner's commencement of the discrimination lawsuit[*2]. Before SDHR rendered its determination, Supreme Court (Nichols, J.) partially granted the petition in the CPLR article 78 proceeding challenging the FOIL denial, ultimately disclosing the requested records subject to certain redactions. In that respect, the court concluded, among other things, that OAG had "failed in [its] primary effort to demonstrate that . . . [p]etitioner personally presents a potential source of endangerment if he is provided with the records sought," characterizing the evidence as consisting of "ad hominem, conclusory assertions."[FN2]
SDHR thereafter dismissed petitioner's retaliation complaint, finding no probable cause to substantiate such a claim insofar as the allegedly defamatory statements, made in court papers, did not form the basis for a viable retaliation claim. In response, petitioner commenced this special proceeding pursuant to Executive Law § 297 challenging SDHR's determination. Following joinder of issue, Supreme Court (O'Connor, J.) dismissed the proceeding, concluding, as relevant here, that SDHR's finding of no probable cause was supported by a rational basis and was neither arbitrary nor capricious. Petitioner appeals.
We affirm. Contrary to petitioner's argument, SDHR's determination that there was no probable cause to support the retaliation claim is not contrary to law, nor is it arbitrary or capricious. "Any person claiming to be aggrieved by an unlawful discriminatory practice" may file a complaint with SDHR "set[ting] forth the particulars thereof" (Executive Law § 297 [1]). Upon investigating the complaint, SDHR may dismiss it without a hearing if it concludes that no probable cause exists (see Executive Law § 297 [2] [a]; Matter of Curtis v New York State Div. of Human Rights, 124 AD3d 1117, 1117-1118 [3d Dept 2015]). "Courts give deference to SDHR due to its experience and expertise in evaluating allegations of discrimination, and will only disturb a determination of no probable cause if it is arbitrary [and] capricious or lacks a rational basis" (Matter of Curtis v New York State Div. of Human Rights, 124 AD3d at 1118 [citations omitted]; see Matter of Meyer v Foster, 187 AD3d 918, 919 [2d Dept 2020]).
Under both Title VII of the Civil Rights Act of 1964 (hereinafter title VII) and the New York Human Rights Law (hereinafter NYHRL),[FN3] a prima facie case of retaliation requires a showing "[1] [that the] complainant . . . engaged in protected activity, [2] that the respondent was aware of this activity, [3] that the respondent took adverse action against the complainant and [4] that a causal connection exists between the protected activity and the adverse action" (Hollandale Apts. & Health Club, LLC v Bonesteel, 173 AD3d 55, 68 [3d Dept 2019]; see United States v New York City Tr. Auth., 97 F3d 672, 677 [2d Cir 1996]; Forrest v Jewish Guild for the Blind, 3 NY3d 295, 313 [2004]). The dispute herein focuses on the third element — i.e., whether OAG's statements about petitioner in the court papers [*3]filed in the FOIL proceeding constituted an adverse employment action.
"In the context of a case of unlawful retaliation, an adverse employment action is one which might have dissuaded a reasonable worker from making or supporting a charge of discrimination" (Keceli v Yonkers Racing Corp., 155 AD3d 1014, 1016 [2d Dept 2017] [citation omitted]; see United States v New York City Tr. Auth., 97 F3d at 677). Courts have found actionable retaliation claims where an employer brings litigation against an employee pursuing a discrimination claim (see Berry v Stevinson Chevrolet, 74 F3d 980, 986 [10th Cir 1996]; Spencer v International Shoppes, Inc., 902 F Supp 2d 287, 294 [ED NY 2012]), recognizing that doing so "can create a 'chilling effect' " on the pursuit of such claim (Equal Empl. Opportunity Commn. v Outback Steakhouse of Fla., Inc., 75 F Supp 2d 756, 758 [ND Ohio 1999], quoting Bill Johnson's Restaurants, Inc. v National Labor Relations Bd., 461 US 731, 741 [1983]). They have declined to do so, however, where the action complained of was undertaken by the employer as an "[o]rdinary defensive measure[ ] . . . for the very purpose of defeating the employee's claim" (United States v New York City Tr. Auth., 97 F3d at 677; see Richardson v Commission on Human Rights & Opportunities, 532 F3d 114, 117 [2d Cir 2008], cert denied 558 US 932 [2009]; Gaughan v Rubenstein, 261 F Supp 3d 390, 421 n 4 [SD NY 2017]). Indeed, "[r]easonable defensive measures do not violate the anti-retaliation provision of Title VII, even though such steps are adverse to the charging employee and result in differential treatment" (United States v New York City Tr. Auth., 97 F3d at 677; see Steffes v Stepan Co., 144 F3d 1070, 1075-1076 [7th Cir 1998]).
Here, petitioner characterizes as retaliatory certain statements made by OAG in defending the denial of his FOIL request, including a statement in an affirmation by an Assistant Attorney General claiming that petitioner had made "increasingly and repeated hateful and alarming allegations" against the individuals to whom the records pertained, thereby subjecting them to potential danger if the records were disclosed. Petitioner also highlights statements in an accompanying memorandum of law that referred to him as a "disgruntled former employee" who had a "vendetta against" the individuals who were the subject of the records, and that, in the underlying discrimination lawsuit, he was making "spurious claims of racism and ageism, which are rife with anti-Semitic sentiment." The memorandum of law argued that disclosing the records sought — which "essentially operate as a type of 'surveillance' of the movement of these individuals" — would be contrary to the interests of their life and safety, noting that petitioner had "attempted to access OAG work spaces since his retirement."
The context within which these statements were made cannot be overlooked. In denying the FOIL request, OAG's appeals officer relied upon, among other things[*4], the public safety exemption of Public Officers Law § 87 (2) (f), which exempts from disclosure information "that, if disclosed, would endanger the life or safety of any other person" (Matter of Bellamy v New York City Police Dept., 87 AD3d 874, 875 [1st Dept 2011], affd 20 NY3d 1028 [2013]). As noted in the memorandum of law submitted by OAG in defending the FOIL denial, "to invoke one of the exemptions of [Public Officers Law §] 87 (2), the agency must articulate [a] particularized and specific justification" for withholding the records (Matter of Gould v New York City Police Dept., 89 NY2d 267, 275 [1996] [emphasis added; internal quotation marks and citation omitted]). It is clear that OAG's defensive statements — although portraying petitioner in an unfavorable light — were motivated not by retaliatory animus for filing the discrimination lawsuit, but to explain in detail the circumstances justifying the denial of the request under FOIL's public safety exemption in an attempt to overcome the statute's strong presumption in favor of disclosure (see generally Matter of Abdur-Rashid v New York City Police Dept., 31 NY3d 217, 225 [2018]). Since these statements were made in a defensive posture during the course of litigation commenced by petitioner, no adverse employment action has been demonstrated (see United States v New York City Tr. Auth., 97 F3d at 677; Richardson v Commission on Human Rights & Opportunities, 532 F3d at 117). Accordingly, Supreme Court properly found that SDHR's finding of no probable cause was neither arbitrary and capricious nor irrational.
Petitioner's remaining contentions warrant little discussion. He takes issue with Supreme Court's denial of his request for an order requiring SDHR "to transfer this case back to the [Equal Employment Opportunity Commission] to avoid a conflict of interest." In that regard, he claims that a "very real possibility exists that [SDHR] had a conflict of interest and should not have decided this case" because Attorney General Letitia James had announced that she "may run for [G]overnor" and, therefore, the employees of SDHR who were involved in dismissing his complaint might have been tempted not to "[d]ecid[e] such a case against their future employer." This assertion — which requires the acceptance of multiple farfetched inferences — is entirely speculative and devoid of proof (see Matter of Kohn [Waverly Homes Dev. LLC], 203 AD3d 1536, 1540 [3d Dept 2022]). Petitioner also contends that SDHR was collaterally estopped from finding that OAG's statements in the FOIL proceeding did not constitute retaliation, as Supreme Court (Nichols, J.) characterized those statements as "largely consist[ing] of ad hominem, conclusory assertions regarding . . . [p]etitioner." However, the issue before SDHR was not identical to the issue before Supreme Court in the FOIL proceeding (see State Farm Fire & Cas. Co. v McCabe, 162 AD3d 1294, 1297 [3d Dept 2018]). Petitioner's remaining arguments, to the extent [*5]not specifically addressed, have been considered and found lacking in merit.
Egan Jr., J.P., Clark and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Petitioner attempted to file an action against OAG in the Court of Claims, but his motion for permission to file a late claim was denied.

Footnote 2: Supreme Court did, however, "perceive a slight possibility that the release of the records to the general public" could be dangerous, justifying the redactions made.

Footnote 3: The Court of Appeals has "consistently held that the standards for recovery under the [NYHRL] are in nearly all instances identical to title VII and other federal law[s]" (Margerum v City of Buffalo, 24 NY3d 721, 731 [2015]).